UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER GOTTI,

                    Petitioner,

    -against-

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 08-CV-2664 (FB)

*Appearances:*
*For the Petitioner:*
JOSEPH A. BONDY, ESQ.
401 Greenwich Street
Fifth Floor
New York, NY 10013

*For the Respondent:*
BENTON J. CAMPBELL, ESQ.
United States Attorney
Eastern District of New York
By: Evan M. Morris, Esq.
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Peter Gotti ("Gotti") moves to vacate his conviction pursuant to 28 U.S.C. § 2255. He argues that the Supreme Court's recent decision in *United States v. Santos*, ___ U.S. ___, 128 S. Ct. 2020 (2008), interprets the money laundering statute, 18 U.S.C. § 1956, so that the conduct of which Gotti was convicted is no longer a crime.

      The government argues, *inter alia*, that Gotti procedurally defaulted his claim by failing to raise it on direct appeal, even though *Stanos* was decided was after Gotti's direct appeal. This argument is based on the theory that, even before the Supreme Court's decision in *Santos*, the interpretation the Court settled upon was not "so novel that its legal basis [was] not reasonably available to counsel," and therefore Gotti's failure to raise it

1

constituted procedural default. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998). The Court does not decide that issue, however. Because this case can be easily resolved on the merits, it is in the interests of judicial economy to dispose of the case without reaching the procedural default issues. *See United States v. Doe*, 66 F. App'x 249, 252 (2d Cir. 2003) ("[B]ecause the merits of the petition are easily resolved, we look beyond the possible procedural default and address the merits." (citing *Kuhali v. Reno*, 266 F.3d 93, 101 (2d Cir. 2001) ("It is well-settled that the doctrine of procedural default is prudential rather than jurisdictional in nature."))). The petition is denied because Gotti's claim is meritless.

I

Gotti was convicted in 2003 of RICO, RICO conspiracy, money laundering conspiracy, and six counts of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(a), 1956(h), 1962(c), 1962(d). *See United States v. Gotti*, 459 F.3d 296 (2d Cir. 2006) (affirming Gotti's convictions). The evidence at trial showed that in 1999 Gotti took over as the acting boss of the Gambino crime family after his predecessor and nephew John A. Gotti went to prison. Gotti and his co-defendants were charged with running two gambling operations and engaging in several acts of extortion—the victims included unions, companies and individuals involved in waterfront shipping, actor Steven Seagal, and a restaurant owner. Incident to his position as head of the family, Gotti received regular "tribute" payments of money generated by the family's criminal activity. *Id.* at 334. Indeed, "the overall purpose of an organized crime family is to generate money from illegal activities for the 'administration'" — that is, the boss and those immediately below him in the hierarchy. *Id.* at 308.

2

## II

In *Santos*, the Supreme Court addressed the definition of the term "proceeds" in the federal money laundering statute when applied to an illegal gambling operation.[1] The statute proscribes, *inter alia*, conducting "a financial transaction which in fact involves the *proceeds* of specified unlawful activity . . . ." 18 U.S.C. § 1956(a)(1) (emphasis added). The transactions at issue in *Santos* were: Santos's payments to his employees (runners who gathered bets from customers and collectors who took money from runners and delivered it to Santos) and his payments to winning bettors. *See Santos*, 128 S. Ct. at 2022-23 (plurality opinion).

There was no opinion for the Court. A plurality of four justices contended that "proceeds" always means "profits." *Id.* at 2025. Justice Scalia, writing for the plurality, argued that there was nothing in the statute to indicate whether "proceeds" meant "profits" or "gross receipts." Since "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them," Justice Scalia contended that the Court should adopt the more "defendant-friendly" rule that the statute *only* forbids laundering of profits. *Id.* The plurality also found its conclusion to be justified because it allows the money laundering statute to avoid the "merger problem." *Id.* at 2026. The

---

[1] In order to dispose of Gotti's argument on the merits, the Court will assume, *arguendo*, that Gotti would be entitled to *habeas* relief if *Santos* held that the conduct of which he was convicted was not criminal and Gotti's claim is not procedurally defaulted. *See United States v. Canady*, 126 F.3d 352, 357 n.1 (2d Cir. 1997) ("Collateral relief under § 2255 is appropriate when there has been an intervening change in the substantive criminal law that establishes that the petitioner's conviction is based on conduct which is no longer regarded as criminal." (citing *Davis v. United States*, 417 U.S. 333, 345-47 (1974))).

3

merger problem would arise if "proceeds" meant "gross receipts," meaning that:

> [a]nyone who pays for the costs of a crime with its proceeds—for example, the felon who uses the stolen money to pay for the rented getaway car—would violate the money-laundering statute. . . . Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

*Id.* at 2026-27. The plurality could not see "why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime." *Id.* at 2027.

Justice Stevens concurred in the result, providing the necessary fifth vote. He concluded that "proceeds" must mean "profits" where the transactions in question involved "revenue generated by a gambling business that is used to pay the essential expenses of operating that business . . . ." *Id.* at 2033 (Stevens, J., concurring). Justice Stevens's opinion appears to be entirely based on the merger problem:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

*Id.* at 2033. Justice Stevens disagreed with the plurality in arguing that the meaning of "proceeds" depends on the context of the statute's application; the plurality contended that "proceeds" *always* means "profits." In light of the available legislative history, Justice Stevens would interpret "profits" to mean "gross receipts" except where the perverse

result generated by the merger problem obtains. *Id.* at 2034 n.7.

III

Gotti argues that *Santos* requires that his conviction must be vacated because there was "no evidence that any monies received by [him] constituted 'profits' of criminal activity." Pet'r Mem. of Law at 3. However, because of the fractured nature of *Santos*, the decision's precedential value is limited. "When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court." *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003) (citing *Rappa v. New Castle County*, 18 F.3d 1043, 1058 (3d Cir. 1994)). As discussed above, between the plurality and Justice Stevens's opinion in *Santos*, no "single rationale explaining the result enjoys the assent of five Justices." *Marks v. United States*, 430 U.S. 188, 193 (1977). Therefore, *Santos* is limited to its facts; it stands only for the proposition that the money laundering statute does not make criminal the use of the revenue from an illegal gambling operation to pay for the expenses involved in running the operation. *See Bull v. United States*, Nos. CV 08-4191 CAS, CR 04-402 CAS, 2008 WL 5103227, at *8 (C.D. Cal. Dec. 3, 2008) ("[G]iven Justice Stevens' opinion that "proceeds" means "profits" only for the purposes of laundering funds from an illegal gambling business, the Court cannot conclude that *Santos* announces a "new rule" defining the term "proceeds" to mean "profits" in all statutes."); *United States v. Orosco*, 575 F. Supp. 2d 1214, 1218 (D. Colo. 2008) ("[T]he only binding aspect of [*Santos* is] its specific result relating to ... illegal gambling on the facts of the case."). That proposition does not justify granting

Gotti *habeas* relief, since he was paid money derived from both extortion and illegal gambling, see *Gotti*, 459 F.3d at 337, and the payments to him did not constitute operating expenses similar to the salary of an employee who collects money from bettors.

Furthermore, even if the rule set forth by the *Santos* plurality were the law, Gotti would not be entitled to the writ. Justice Scalia's opinion states that "by definition profits consist of what remains after expenses are paid." *Santos*, 128 S. Ct. at 2027 (plurality opinion). In excluding the conduct at issue in *Santos*, the justices joining the plurality offered clues as to what they consider the definition of "proceeds" to include: "Defraying an activity's costs with its receipts simply will not be covered." *Id.* The payment of tributes to the head of an organized crime family does not involve defraying costs; it is nothing like payments by a gambling operation to individuals who collect money or win bets. Gotti was not paid for services rendered to keep the organization running; he was paid because he was the head of the family. Tributes to a crime boss are precisely "what remains after expenses are paid." *Santos*, 128 S. Ct. at 2027; *see United States v. Shelburne*, 563 F. Supp. 2d 601, 607 (W.D. Va. 2008) (holding that salary payments to defendant who operated a scheme to defraud Medicare were proceeds under *Santos*, "since they could only come from the profits of his specified unlawful activity").

The result reached here fits with reasoning employed by both the *Santos* plurality and Justice Stevens's concurrence: Gotti's conviction for money laundering does not pose the merger problem. In *Santos*, the defendant's payments to his employees and winning bettors were necessary transactions for someone running an illegal gambling operation; considering those payments to be money laundering would have made the same

6

conduct constitute both illegal gambling and money laundering. Gotti's receipt of tribute payments was not the same conduct as the extortion and illegal gambling operations from which those payments were derived; Gotti "earned" money not by performing work required to keep the business operating, but merely by virtue of his position at the top of the family hierarchy. Unlike the normal operating expenses at play in *Santos*, Gotti's tribute payments were transactions designed to dispense the profit from illegal activities and conceal the source of the money paid. *See Gotti*, 459 F.3d at 337.

## CONCLUSION

The petition is denied. A certificate of appealability will not issue because Gotti has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

s/FB

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 28, 2009